# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

RALPH SMITH, et al.,

          Petitioners,

v.                                                 CIVIL ACTION NO. 2:19-cv-00235

INTL FCSTONE FINANCIAL, INC.,

          Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant INTL FCStone Financial, Inc.'s ("FCStone") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, Motion to Transfer pursuant to 28 U.S.C. § 1404(a) or Motion to Dismiss under the doctrine of *forum non conveniens*. (ECF No. 9.) For the reasons stated herein, the Court **GRANTS** the motion to dismiss for lack of subject matter jurisdiction and **DENIES AS MOOT** the Motion to Dismiss under the doctrine of *forum non conveniens* and the Motion to Transfer.

### I.    BACKGROUND

FCStone is a futures commission merchant and member of the Financial Industry Regulatory Authority ("FINRA"), a self-regulatory organization for brokerage firms in the United States. (ECF No. 1 at 1.) Petitioners Ralph Smith, A. Wayne, Gwen Rich, Mark Viqueira, Jain Trading, LLC, the Michael M. Hendricks Trust, Jim Jones, Janstar Enterprises, Inc., and Massimiliano Pula (collectively, "Petitioners") are investors, who maintained separate commodity

trading accounts with FCStone at all times relevant to this action. (*Id.* at 4 ¶ 13.) In connection with their accounts, each Petitioner executed a customer agreement with FCStone. (*Id.* ¶ 17.) This Customer Agreement included a forum selection clause, providing, in pertinent part, as follows:

> Customer acknowledges this Agreement is governed by the Laws of the State of Illinois. Customer hereby submits and consents to the jurisdiction of the Courts of the State of Illinois and, shall be amenable to service of summons and other legal process of, and emanating from, the State of Illinois. Customer expressly waives the right to the adjudication or enforcement of such controversies by any court or any other tribunal sitting in any other jurisdiction . . . . CUSTOMER AGREES [*sic*] CONTROVERSY BETWEEN [FCSTONE] AND CUSTOMER ARISING OUT OF THIS AGREEMENT, REGARDLESS OF THE MANNER OF RESOLUTION, SHALL BE ARBITRATED OR LITIGATED IN A COURT OF LAW OR OTHERWISE RESOLVED BY A TRIBUNAL LOCATED IN CHICAGO, ILLINOIS.

(ECF No. 12-1 at 24 (Customer Agreement).) The Customer Agreement also included an arbitration provision, which states that "[a]ny controversy or claim arising out of or relating to [the] accounts shall be settled by arbitration, either (1) under the Code of Arbitration of the National Futures Association, or (2) upon the contract market on which the disputed transaction was executed or could have been executed." (*Id.* at 27.)

In November 2018, "Petitioners learned that a 'catastrophic loss event' had destroyed the value of their accounts with [FCStone]." (ECF No. 1 at 1–2.) "FINRA Rule 12200 preserves a customer's ability to resolve disputes through FINRA arbitration, regardless of whether arbitration is required by a written agreement." (*Id.* at 2.) Pursuant to FINRA Rule 12200, Petitioners initiated FINRA arbitration claims on March 28, 2019, alleging that FCStone's misconduct caused Petitioners' losses. (*Id.* at 5 ¶ 19.) Specifically, Petitioners' Statement of Claim asserts claims against FCStone for (1) negligence, (2) breach of contract, (3) aiding violations of various state

statutory Blue Sky Laws, and (4) aiding a breach of fiduciary duty. (ECF No. 1-2 (Statement of Claim)).) FINRA set the matter for arbitration in Charleston, West Virginia, (ECF No. 12-1 at 28–33 (FINRA Summons Letter)), but FCStone "disputed FINRA jurisdiction and filed an Objection to proceeding in FINRA that remains pending before the Director of FINRA Arbitration." (*Id.* at 34–46 (Objection to FINRA Arbitration).)

Petitioners then filed the present action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, *et seq.*, to compel FCStone to arbitrate. (ECF No. 1.) On May 13, 2019, FCStone filed a motion to dismiss for lack of subject matter jurisdiction. (ECF No. 9.) Alternatively, FCStone moves this Court to transfer this action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C § 1404(a) or dismiss this matter under the doctrine of *forum non conveniens*. (*Id.*) Petitioners filed a response on June 11, 2019, (ECF No. 12), and FCStone filed a reply on June 25, 2019, (ECF No. 15). As such, the motion is fully briefed and ripe for adjudication.[1]

## II. LEGAL STANDARDS

*A. Motion to Compel Arbitration*

The Federal Arbitration Act ("FAA") was in enacted in 1925 to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place [them on] the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). It provides that arbitration clauses in contracts concerning interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

---

[1] After this matter became ripe for review, FCStone filed a motion to supplement its motion to dismiss with case law for the Court's consideration. (ECF No. 19.) Petitioners filed a response in opposition, (ECF No. 20), however, the Court finds that this case relied on by FCStone is inapplicable to the jurisdictional issues addressed herein. Therefore, the motion is **DENIED AS MOOT**. (ECF No. 19.)

3

9 U.S.C. § 2. Thus, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id.* (citing *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)).

Under section 4 of the FAA, "a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.' The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Rent-A-Center West, Inc., v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). A party seeking to compel arbitration pursuant to this section must establish the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)) (internal quotation marks omitted).

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a federal court must dismiss an action if the court lacks subject-matter jurisdiction over the claim. *See Zimmeck v. Marshall Univ. Bd. of Governors* (*Zimmeck I*), No. 3:13-cv-14743, 2013 WL 5700591, at *2 (S.D. W. Va. Oct. 18, 2013). A challenge to subject matter jurisdiction may be either facial or factual. *See Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). A "facial" challenge to jurisdiction attacks the complaint's allegations of

jurisdictional facts. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In that manner, it is similar to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, in that "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. A "factual" challenge, on the other hand, involves an assertion "that the jurisdictional allegations of the complaint [are] not true." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). When ruling on a factual challenge, "[t]here is no presumption of truth," and this Court "may . . . go beyond the allegations of the complaint and hold an evidentiary hearing to determine if there are facts to support the jurisdictional allegations." *Id.* (internal quotation marks omitted). FCStone's challenge is facial because it relies on the facts alleged in the Petition.

### III. DISCUSSION

FCStone moves to dismiss Petitioners' Petition for lack of subject matter jurisdiction. Article III of the United States Constitution provides, in pertinent part, that "[t]he judicial Power shall extend . . . to Controversies . . . between Citizens of different States." U.S. Const. art. III, § 2. Under 28 U.S.C. § 1331, federal district courts have original jurisdiction "of all civil actions arising under the constitution, laws, or treaties of the United States." Additionally, 28 U.S.C. § 1332(a)(1) confers federal district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." For purposes of determining whether a federal court possesses subject matter jurisdiction based on diversity of citizenship, a corporation is deemed "to be a citizen of any State by which it has been incorporated and of the State where it has its principal

place of business." *Id.* § 1332(c)(1).

### A. Diversity Jurisdiction

FCStone first argues that the Court does not have diversity jurisdiction because FCStone is incorporated in Florida, (ECF No. 9-1 (McCarthy Dec.)), and Petitioners A. Wayne and Gwen Rich are citizens of Florida, (ECF No. 1 at 1 ¶ 2). Petitioners do not address and, consequently, concede this in their response.[2] Thus, because FCStone and two of the Petitioners are citizens of the same state, this Court does not have diversity jurisdiction over Petitioners' claims.

### B. Federal Question Jurisdiction

Relatedly, FCStone argues that the Court lacks federal question jurisdiction because Petitioners' underlying disputes do not implicate federal law. (ECF No. 10 at 6.) In support of this assertion, FCStone cites Petitioners' Statement of Claim before FINRA as containing only "(a) state common-law claims for negligence, breach of contract, aiding and abetting a breach of fiduciary duty; and (b) state statutory claims under the Blue Sky Laws of various states." (*Id.*; ECF No. 1-2 at 7–9.) Petitioners respond that FCStone violated FINRA rules 2090, 2360, and 2010, which Petitioners assert are "all federal regulations." (ECF No. 12 at 4.) Further, Petitioners contend that FCStone "violated the Commodity Exchange Act (7 U.S.C. § 1 *et seq.*) and the Internal Revenue Code (26 U.S.C. § 1 *et seq.*), and other federal securities rules and regulations." (*Id.*)

Significantly, the Supreme Court has established that the FAA itself "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discovery Bank*, 556 U.S. 49, 59 (2009) (quoting *Hall Street*

---

[2] The Petition alleges that A. Wayne and Gwen Rich are Florida citizens, (*id.*), and that FCStone's principal place of business is in Florida, (*id.* at 3 ¶ 9).

6

*Assoc. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008)) (internal quotation marks omitted). Thus, a court "should determine its jurisdiction by 'looking through' a [section] 4 petition to the parties' underlying substantive controversy." *Id*. at 62. The "party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Id*. It is the underlying dispute rather than the petition that controls. *Id*. at 67.

The well-pleaded complaint rule has long governed whether a case "arises under" federal law. *See, e.g., Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28 (1974); *Vaden*, 556 U.S. at 60 (explaining that, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law." (internal quotation omitted)). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Vaden*, 556 U.S. at 62 (in keeping with the well-pleaded complaint rule, a court may not entertain a § 4 petition based on an actual or hypothetical defense to the underlying claims).

However, the Supreme Court has long recognized that federal question jurisdiction also exists in cases in which "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986); *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 180, 199 (1921). The substantial federal question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state

law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. Instead, the Court must ask: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). When these elements are met, jurisdiction is proper. *Id.* However, the Supreme Court has explained that the category of cases applying jurisdiction under *Grable* is "special and small." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

With these principles in mind, the Court finds that Petitioners' underlying claims do not implicate federal law. In the underlying action, Petitioners assert state law claims for negligence, breach of contract, aiding violations of state blue sky laws, and aiding a breach of fiduciary duty. These claims are based on Petitioners' allegations that FCStone failed to effectively service and supervise Petitioners' trading accounts. Petitioners argue that this Court has jurisdiction because these claims are premised on FINRA rules. (ECF No. 12 at 4–5.) While the resolution of Petitioners' underlying claims will require reference to FINRA rules, FINRA itself provides no private right of action. *See Parsons v. Hornblower & Weeks-Hemphill, Noyes*, 447 F. Supp. 482,

8

494 (M.D. N.C. 1977), *aff'd per curiam*, 571 F.2d 203 (4th Cir. 1978); *Carras v. Burns*, 516 F.2d 251, 260 (4th Cir. 1975) (holding that while a broker may be disciplined for a violation of internal rules, "he would be liable to his customer only if his breach of the rules also violate[ed] the Act by operating as a fraud."); *see also Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413, 1419 (11th Cir. 1983) (no private right of action for violation of the "know your customer" rule federal securities laws); *Spicer v. Chicago Bd. of Options Exch., Inc.*, 977 F.2d 255, 266 (7th Cir. 1992) (no implied private right of action for violation of internal rules); *Hoxworth v. Blinder Robinson & Co.*, 903 F.2d 186, 200 (3d Cir. 1990) (NASD, now FINRA, regulations do not give rise to a private right of action).

Petitioners also contend that the Internal Revenue Code ("IRC"), 26 U.S.C. § 1, *et seq.* and federal tax regulations will be implicated because Petitioners allegedly suffered losses to their Individual Retirement Accounts ("IRA") that offer certain tax advantages under the IRC. (ECF No. 12 at 4.) In particular, they claim that "FCStone failed to fulfill its custodial and safekeeping role as trustees" of Petitioners' IRAs by allowing "trading on various commodities with IRA money." (*Id.*) While Petitioners do not explain in their response to the motion how their claims will implicate an interpretation of the IRC, the Statement of Claim states that "[t]rying to use IRA assets as collateral can put the tax-exempt status of an entire retirement account at risk, and now [Petitioners] are faced with the desperate question of their tax implications for these losses and payment of deficits in their IRAs." (ECF No. 1-2 at 5.) Clearly, any tax impact to Petitioners' IRAs is not necessary to the determination of their state law claims. *See Pinney*, 402, F.3d at 442 ("A plaintiff's right to relief necessarily depends on a question of federal law when 'it appears that some . . . disputed question of federal law is a necessary element of one of the well-pleaded state

9

claims.'" (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)). As neither claims for negligence, breach of contract, aiding violations of state blue sky statutes, nor aiding breach of fiduciary duty necessarily depend upon the resolution of potential tax implications to Petitioners, their underlying claims do not turn on substantial questions of federal law under the IRC.

Further, while Petitioners contend that they are asserting claims in the underlying action for violations of the Commodities Exchange Act, this is not apparent on the face of the Statement of Claim. The Statement of Claim does not assert a cause of action for violations of the Commodities Exchange Act nor does it so much as mention the Act or any other federal securities laws or regulations. In an attempt to overcome this deficiency, Petitioners assert that FINRA does not require a statement of claim to allege specific causes of action or to otherwise comply with the traditional pleading requirements under the Federal Rules of Civil Procedure. (ECF No. 12 at 5.) However, without further explanation, the Court is not convinced that Petitioners intended to assert claims under the Commodities Exchange Act or did so implicitly. In fact, the Statement of Claim calls attention to Petitioners' express claims, stating that "[h]eadings are used . . . as a means of labeling causes of action . . . ." (ECF No. 1-2 at 2.)

To the extent Petitioners contend that their underlying claims depend upon FCStone's compliance with the Commodity Exchange Act, Petitioners have not explained how these laws and regulations will be implicated. Instead, Petitioners summarily allege in the Petition that their claims arise under the Act and other various federal statutes, rules, and regulations. (ECF No. 1 at 4 ¶ 11.) As stated previously, it is the underlying dispute that controls whether federal courts have jurisdiction, not the § 4 petition. *See Vaden*, 556 U.S. at 67 (stating that "[s]ection 4 does

not give parties license to recharacterize an existing controversy, or manufacture a new controversy, in order to obtain a federal court's aid in compelling arbitration."). Petitioners simply have not met their burden of proving subject matter jurisdiction. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (holding that "[t]he burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction."); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Accordingly, as no diversity or federal question exists in the underlying dispute, the Court may not exercise jurisdiction over this action.

This action is unlike cases brought under the FAA where a petitioner also asserts declaratory or injunctive relief concerning the application of FINRA Rule 12200 or whether the parties are bound to a forum selection clause, such as the arbitration provision contained in FCStone's Customer Agreement. *See, e.g., Smith Barney, Inc. v. Critical Health Sys. of N.C., Inc. of Raleigh, N.C.*, 212 F.3d 858 (4th Cir. 2000) (securities firm brought suit to enjoin arbitration proceedings initiated by customer). In such a case, the Court would have subject matter jurisdiction to determine the proper arbitral forum. Here, the Petition does not ask this Court to make this determination. Rather, it simply asks the Court to order arbitration of their underlying claims, which, for the reasons discussed above, the FAA does not empower this Court to do. *See Bear Stearns & Co. v. N.H. Karol & Assocs., Ltd.*, 728 F. Supp. 499, 500 (N.D. Ill. 1989) (where the plaintiff's claims for violations of the Securities and Exchange Act were ordered to arbitration and dismissed, the court lacked jurisdiction over the defendant's subsequently filed motion to compel arbitration before a different arbitral forum). However, Petitioners are not without recourse. The Supreme Court reiterated in *Vaden* that "state courts as well as federal courts are obligated to honor and enforce agreements to arbitrate" under the FAA. *Vaden*, 556 U.S. at 71

(citing *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25, 26, n. 34.). Therefore, Petitioners may pursue their petition in a state forum.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** FCStone's motion to dismiss for lack of subject jurisdiction and **DENIES AS MOOT** the motion to transfer and motion to dismiss under the doctrine of *forum non conveniens*. (ECF No. 9.) The Court further **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 25, 2020

_____
THOMAS E. JOHNSTON, CHIEF JUDGE